Argued November 6, decided December 8, 1908.

## VOORHEES v. GEISER-HENDRYX INV. CO.

[98 Pac. 324.]

APPEAL AND ERROR — DISCRETION OF TRIAL COURT — RELIEF FROM DEFAULT — SURPRISE.

1. Under Section 103, B. & C. Comp., permitting the trial court to relieve a party from a judgment, etc., taken through mistake, surprise, etc., the trial court's discretion is not arbitrary, but should be exercised in the spirit of the statute, so as to aid substantial justice, and an erroneous exercise of this power is reviewable.

JUDGMENT—DEFAULT JUDGMENT—RELIEF—"JUDGMENT TAKEN THROUGH SURPRISE"—GROUNDS—SURPRISE.

2. A judgment taken against a party contrary to an agreement with his adversary is one taken by surprise within Section 103, B. & C. Comp., permitting the trial court to relieve against a "judgment taken through surprise," etc.

STIPULATIONS—AUTHORITY TO MAKE—AGENCY.

3. Where a company, against which an action had been brought, was largely indebted to a bank, and had no means of settlement except its interest in a mining company, which it authorized the bank to dispose of, and the company and the bank were represented by the same attorney, and the bank, with the consent of the company and its attorney, was trying to adjust the litigation with plaintiff, so as to protect their interests, the bank, in making an agreement with plaintiff as to entry of judgment in the litigation, and other agreements as to the disposition of the property in litigation, was acting as agent for defendant company.

STIPULATIONS—VALIDITY.

4. A letter written by plaintiff to his attorney at the request of defendant's attorney, containing directions not to enter a default judgment, until defendant had secured another's consent to its entry, was binding upon plaintiff, within a rule of court requiring agreements between litigants to to be reduced to writing, and signed by the party to be bound, in order to be enforceable.

From Baker: WILLIAM SMITH, Judge.

This is a suit by C. S. Voorhees, as a trustee of the Taber Fraction Mines Company, against the Geiser-Hendryx Investment Company and Clark Taber, praying that the investment company be decreed to be a trustee for plaintiff, and as such, holding the title to the Con-

solidated Fractional Quartz Mining Claim and the Rastus Claim, and to have Taber's interest in such mining property determined. From a default decree in favor of plaintiff, and an order denying a motion to set aside the decree, and for leave to answer, two of the defendants appeal.

Statement by MR. CHIEF JUSTICE BEAN.

On February 27, 1907, plaintiff, as a trustee of the Taber Fraction Mines Company, commenced a suit in the Circuit Court of Baker County against the Geiser-Hendryx Investment Company and Clark Taber, praying that the investment company be decreed to be a trustee for plaintiff, of the title to the Consolidated Fractional Quartz Mining Claim and the Rastus Claim, to have Taber's interest in such mining property determined, and for other relief. At the commencement of the suit the Geiser-Hendryx Investment Company, in addition to its asserted interest in the mining property referred to, was the holder of 171,372 shares of the capital stock of the Taber Fraction Mines Company of the par value of $1 each, which had previously been seized under a writ of attachment issued in actions brought against the investment company by plaintiff and one A. J. Hanauer, in Spokane County, Washington. It was also largely indebted to the Merchants' National Bank of Portland, and had no property with which to pay its obligations, except its interest, if any, in the mining property in question, and the shares of stock held by it in the Taber Fraction Mines Company. Service was had on the investment company, in the suit brought by plaintiff in Baker County, on the 1st day of April in Multnomah County. On the 16th of that month Hanauer, the Merchants' National Bank, and plaintiff, as trustee, with a view to a settlement of the controversy over the title to the mining property in question and the payment of their several obligations against the Geiser-Hendryx Investment Company, entered into a written agreement, pro-

viding, in substance, that the bank should take care of Taber's interest in the mining property and obtain a conveyance of it to the Taber Fraction Mines Company, and that, if one or all of the parties to the agreement should be able to obtain deeds from the Geiser-Hendryx Investment Company, conveying its right, title, and interest in such mining property to the Taber Fraction Mines Company, the Merchants' National Bank would pay to Hanauer one half of the difference between the amount due it from the investment company and the amount due Hanauer from such company, in which event the bank was to receive an amount of stock in the Taber Fraction Mines Company equal to one half the holding of the Geiser-Hendryx Company therein. In case, however, of the inability of the parties to obtain the deeds referred to from the investment company, it is stipulated "that this understanding shall continue until such time as the present litigation of the title to said mining properties or such other litigation as may hereafter be instituted by the parties hereto or those interested with them, shall have been determined." The agreement was dictated by Mr. Muir in plaintiff's office at Spokane, and plaintiff knew at the time that Muir was the attorney for the investment company and the Merchants' National Bank. Mr. Muir, acting on the theory that the agreement referred to would ultimately result in the settlement of the litigation in Baker County, and that no further steps would be taken therein pending the consummation of such agreement, neglected to enter an appearance for the investment company, and on May 17th its default was duly entered, but no decree taken.

On June 7th Mr. Muir was again in Spokane to interview plaintiff on matters connected with the proposed settlement, at which time he learned, through a letter received by plaintiff from Mr. Rand, his attorney in Baker, that the default of the investment company had been entered. Mr. Muir thereupon requested plaintiff

to communicate with Mr. Rand with a view to having him postpone entry of decree until he could obtain from his client, the investment company, written authority to permit such entry, and plaintiff thereupon wrote and mailed to Mr. Rand the following letter:

"June 7, 1907.

"Hon. John L. Rand, Baker City, Or.

"My Dear Mr. Rand: As I write this letter, our mutual friend Muir, of Portland, is standing by. He and Mr. Watson arrived here from Portland this morning, and we have all day been in consultation with a view to an adjustment between Hanauer and the Merchants' National Bank, which will be satisfactory to all concerned. We have every reason to believe that we will eventually strike hands in such a way that we will both join forces for the administering of a licking to Clark Taber. Your letter of the 5th inst. reached me this morning, and I called Mr. Muir's attention to it upon his arrival in my office this afternoon. Mr. Muir understands from that letter that you have caused the default of Hendryx and the Geiser-Hendryx Investment Company to be entered in the suit of myself, trustee, against them and Clark Taber, but he desires me to request that you will not cause a decree to be entered in this suit until he shall have secured, from Hendryx, such a paper writing as shall show the consent of Hendryx and his company to the entry of such a decree, Mr. Muir's particular reason being, as you will readily understand, that his attitude in the premises, in connection with this default, shall be absolutely ethical and Hendryx shall, at no time in the future, have it to say that a default decree was entered by reason of any failure of attention upon the part of Mr. Muir. Mr. Muir says that in permitting the default to be entered, he was acting under oral instructions from Hendryx, but that he desires, for reasons that are perfectly obvious to both you and me as well as to himself, that these oral instructions shall be perpetuated in writing. I think that every matter embraced in the Baker County litigation will be adjusted as a result of the agreement now in process of consummation. For this reason, when the time comes to enter the decree, it will be a decree merely bearing upon the title of the Rastus and Taber claims. With very cordial regards, I am, very truly yours,

"C. S. Voorhees."

On the same date this letter was written a supplemental agreement was entered into between Hanauer, the Merchants' National Bank, and plaintiff, modifying the previous agreement of April 16th, by eliminating therefrom the clause requiring the bank to obtain a conveyance from Taber of his interest in the mining property, and substituting ·in lieu thereof a stipulation that the parties to the agreement should use their best endeavor· in conducting the necessary litigation against Taber for the purpose of determining what interest ·he had in such property, and that, if it should result that· he had an interest therein by way of mortgage, the bank would, upon final decree being rendered, pay $5,000 of such decree, if it be so much, and the Taber Fraction Mines Company the balance. It was further stipulated that each party shall pay their own counsel fees incurred in the litigation in either Oregon or Washington, and the Geiser-Hendryx Investment Company shall pay whatever attorney fees it may incur therein. No further action was taken in the litigation in Baker County until June 29th, when a decree was entered therein against the investment company, as prayed for in the complaint, without Mr. Muir's knowledge or consent. On July 31st the investment company appeared by Mr. Muir, and moved the court for an order setting aside the decree and for leave to answer, on the ground that such decree had been taken against it through mistake and excusable neglect. The affidavits in support of, and against, the motion, disclose the facts substantially as detailed. The motion was denied, and defendants appeal.

REVERSED.·

For appellants there was a brief over the name of *Mr. William T. Muir,* with an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Mr. John L. Rand* and *Mr. C. S. Voorhees,* with an oral argument by *Mr. Vernon W. Tomlinson.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The statute provides that the court may "in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." Section 103, B. & C. Comp.  An application under this section to be relieved from a default, is addressed to the discretion of the trial court. It however is not arbitrary, but should be exercised in conformity with the spirit of the law, and in a manner to advance substantial justice.  An erroneous exercise thereof is reviewable by this court.  *Thompson* v. *Connell,* 31 Or. 231 (48 Pac. 467: 65 Am. St. Rep. 818) ; *Hanthorn* v. *Oliver,* 32 Or. 57 (51 Pac. 440: 67 Am. St. Rep. 518).

2. A judgment taken against a party contrary to an understanding or agreement with his adversary, is taken against him by surprise within the meaning of the statute (*Thompson* v. *Connell, supra; Durham* v. *Commercial Nat. Bank,* 45 Or. 385: 77 Pac. 902), and upon a showing to that effect, seasonably made, should be opened, and the defaulted party permitted to defend, if he has a meritorious defense.

3. Now it seems to us from the affidavits on file that the decree in question was taken against the investment company contrary to the understanding and agreement between the plaintiff and Mr. Muir, the counsel for such company.  It is true negotiations for the settlement and adjustment of the litigation concerning the title to the mining property were principally conducted between plaintiff and the Merchants' National Bank, but the bank was, in effect, acting for the investment company.  The company was largely indebted to it, and had no assets with which to discharge such indebtedness, except its interest in the mining property, and this it was willing the bank might dispose of as it thought expedient.  The

bank and company were both represented by the same attorney, and the bank was, by the assent of the company and its attorney, trying to arrive at some adjustment which would protect it. In making the several agreements, therefore, it was in effect acting as agent of the investment company, and its agreement was that of the company. The purpose was to dispose of the entire controversy over the title to the mining property by vesting such title in the Taber Fraction Mines Company. This was to be done either by a voluntary conveyance from the investment company or as a result of the litigation then pending concerning the title, or such other litigation as might thereafter be instituted by either party to the agreement. That this understanding and agreement was still in force at the time the default was taken is evidenced by the fact that on June 7th after such default had been entered, a modification thereof was made  Plaintiff claims, however, that these agreements had reference only to litigation then pending against the Geiser-Hendryx Investment Company in Spokane, and not that in Baker County. The title to the mining property was the subject of the contract, and that was not in controversy in the Spokane litigation. The only suit concerning the title was in Baker County, and therefore the contract must have had reference to such litigation. It was the manifest purpose of the parties to adjust and settle all litigation pending at the time, either in Washington or Oregon, and to adjust it as to all parties concerned therein, with the exception of Taber. This view is confirmed by the letter of June 7th from plaintiff to his attorney, written at the request of Mr. Muir and to the contents of which Mr. Muir assented. In this letter plaintiff says: "I think that every matter embraced in the Baker County litigation will be adjusted as a result of the agreement now in process of consummation," and that "we have every reason to believe that we will eventually strike hands in such a way that we will both join forces for the administering of a licking

to Clark Taber." Taber was the only party, other than the investment company, claiming any interest in the mining property in Baker County, and it is evident throughout all the negotiations between the plaintiff and Mr. Muir, as well as in the letter referred to, that it was the understanding and agreement that the interest of the Geiser-Hendryx Investment Company would be disposed of in accordance with the stipulation of the parties, and that, if such agreement was consummated, a complete settlement of the litigation then pending, except as to Taber, would be perfected. It was in pursuance of this understanding and agreement that plaintiff wrote his attorney at Baker City not to take a decree against the investment company until Muir could obtain its written consent thereto. The decree subsequently taken was in violation of the letter and spirit of this understanding. It was taken without notice to or knowledge of Mr. Muir, and without ascertaining whether he had obtained the necessary written authority from his client. It seems to us that, under all the circumstances, equity and fair dealing require that the decree be set aside and that defendant be permitted to answer, and that it was an erroneous exercise of discretion by the court below, to refuse such relief.

4. It is suggested that a rule of the court provides that no contract or agreement between parties litigant will be recognized or enforced unless it is made in open court and a note thereof made in the judge's minutes, or reduced to writing and signed by the parties to be bound thereby. This rule we think was complied with in the case at bar. The agreement to postpone the entry of the decree which we think was violated, was in writing and signed by the plaintiff, the party to be bound thereby, and thus complied in spirit and letter with the rule referred to.

The decree of the court below is reversed and the cause remanded to that court, with directions to allow the motion to set aside the decree and for permission to answer.                                                                REVERSED.