Argued November 6, 1908, decided February 23, 1909.

## McCOY v. HUNTLEY.

[99 Pac. 932.]

JUDGMENT—VACATING—INADVERTENCE AND EXCUSABLE NEGLECT.

1. The authority conferred by Section 103, B. & C. Comp., to vacate a judgment taken against a party through his mistake, inadvertence, surprise, or excusable neglect, is not an arbitrary power to be employed at pleasure in granting or denying the summary relief invoked, but is a legal discrimination, to be exercised in furtherance of justice and in accordance with the rules of jurisprudence.

JUDGMENT — DEFAULT DECREE — SETTING ASIDE — INADVERTENCE AND EXCUSABLE NEGLECT.

2. Where defendant saw an attorney within the time allowed to answer, and believed that he had retained the attorney to represent him, and was thereafter called away and unexpectedly detained, and did not realize that

his attorney, whom he notified of his detention, could not properly represent
him in his absence because of no statement of facts having been made to him
and answer filed, and where his verified answer, if established, would entitle
defendant to the use of the water of a creek for irrigation, and to permit the
default decree entered against him to stand, would practically destroy the
value of his farm by depriving him of one-half of the water of the creek, it
was an abuse of discretion to deny a motion under Section 103, B. & C. Comp.,
to set aside the decree on the ground of inadvertence and excusable neglect.

From Wheeler: WILLIAM L. BRADSHAW, Judge.

Suit by C. J. McCoy and H. R. McCoy against Charles
Huntley. Plaintiffs had a default decree, and, from an
order denying a motion to vacate the same, defendant
appeals.                                              REVERSED.

For appellant there was a brief and an oral argument
by *Mr. Jay Bowerman.*

For respondent there was a brief and an oral argument
by *Mr. William H. Wilson.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is an appeal by the defendant from an order of
the circuit court for Wheeler County, refusing to vacate
a decree rendered in a suit which was instituted by C. J.
McCoy and H. R. McCoy against Charles Huntley to
establish their alleged right to the use of two-thirds of
the water of Pine Creek, to enjoin the defendant from
interfering with the flow of that quantity of water to
their lands, and to recover damages for an asserted
unlawful diversion. The summons, a certified copy of
the complaint, and a preliminary writ of injunction were
personally served in that county June 1, 1906, upon the
defendant, but he failed to appear or answer within the
time prescribed, and a motion for a default was filed.
A decree was rendered September 5, 1906, giving to the
plaintiffs one-half of the water mentioned, and per-
petually enjoining the defendant from interfering there-
with, but no damages were awarded. The defendant on
April 1, 1907, tendered a verified answer, denying the
averments of the complaint, and alleging facts which tend
to show that during the irrigating seasons he is entitled

to the use of all the water flowing in the creek. He also moved to set aside the decree on the ground that it was rendered in consequence of his inadvertence and excusable neglect, and in support thereof filed his affidavit, to the effect that, after the suit was commenced he engaged John A. Collier, an attorney, to defend for him; that about July 31, 1906, he was obliged to go to Alberta, Canada, where certain business engagements unavoidably detained him until about October 5, 1906, when he returned; that in the year 1903 he agreed to lease his land, through which Pine Creek flows, to George Duncan, with whom he went to the office of H. H. Hendricks, one of the plaintiffs' attorneys, to have the papers prepared. In answer to Duncan's inquiry as to the extent of Huntley's authority to use the water for irrigation, Hendricks replied that the defendant's right thereto was absolute, and he could not be deprived thereof by any court; that other persons in whom he reposed confidence made to him similar reports, from which information he believed and thought it impossible that the use of the water, which he had enjoyed for more than 25 years, would be tampered with, and that he supposed his interests in this suit could be protected in his absence by Collier, whom he had engaged for that purpose. Hendricks, opposing the motion, filed an affidavit, in which he states, in substance, that he told Duncan, if he leased Huntley's land, he need have no fear that he would be deprived of the use of the water, but that such conversation was causal and for which opinion no fee was charged or expected; that, after the summons in this suit was served, he saw the defendant, who stated that he did not intend to pay out any money to an attorney to defend the suit, but would permit the trial judge to decide the case, and, if the plaintiffs obtained the use of one-half of the flow of the stream, he would compel the people who diverted water from the creek above his premises to divide with him; that affiant informed the defendant that, unless he

answered the complaint, the relief prayed for therein would be granted, but, if he concluded to make no defense, the expenses to be incurred by the plaintiffs would thereby be lessened, in consequence of which their claim for damages might be relinquished; and that he conferred with them, related what Huntley had said, and they waived the damages. Hendricks does not state, however, that the defendant agreed to the proposal. The sworn statement in relation to the waiver is corroborated by the affidavit of H. R. McCoy, one of the plaintiffs, wherein he states that about June 12, 1906, Hendricks asked him if he would agree to forego the claim for damages, in case no defense was made to the suit, and he instructed such attorney to accept the offer which he was informed had been made. When this motion was heard in the court below, Collier appeared as a witness, and testified that about the middle of July, 1906, Huntley called at his office and requested him to ascertain the status of his case; that shortly thereafter the witness went to the courthouse, and found that a motion for a default had been filed; and that he was never employed by the defendant in this suit. Collier also produced and identified a letter which he received from Huntley, written in Alberta, August 22, 1906, the material parts of which are as follows:

"I write you a few lines in regard to our case in court. I don't think I can possibly get back in time to attend. I have been delayed here unexpectedly."

The witness further testified that at the time he received this communication he was the deputy district attorney, and that an information had been returned against two persons, charging them with the commission of a crime, in which action Huntley was the complaining witness. The defendant filed a supplemental affidavit, denying nearly every statement made by Hendricks, and asserting that about seven days after the summons was served he saw Collier, and supposed he had engaged his

services to make the defense in this suit; that, when he
left Wheeler County, he expected to return in time to
attend the trial of this cause at the September term of
the court, but was unavoidably detained; that the letter
which he wrote in Alberta related to this suit; and that
he did not realize that, on account of no answer having
been filed, Collier could not properly represent him in
his absence. Based on these affidavits, and on the record
of the cause as hereinbefore stated, the motion to set
aside the decree was denied, to review which action of
the court this appeal is prosecuted.

1. Our statute, authorizing the vacation of a judgment,
contains a clause which, so far as material herein, is as
follows:

"The court may * * in its discretion, and upon such
terms as may be just, at any time within one year after
notice thereof, relieve a party from a judgment, order,
or other proceeding taken against him through his mis-
take, inadvertence, surprise, or excusable neglect." Sec-
tion 103, B. & C. Comp.

It will be remembered that the application to vacate
the decree was made within the time prescribed; and,
this being so, the question to be considered is whether an
error was committed in denying the motion. A perusal
of defendant's affidavit will show that the decree was
rendered against him when he was unexpectedly detained
at Alberta, and that he supposed his interests in this suit
were being safeguarded by an attorney whom he thought
he had engaged for that purpose, and who, having
received ample notice of the unavoidable detention, was
able to protect his interests in his absence. Huntley
states upon oath that within 10 days, as allowed by law
to appear in a cause, after the summons was served upon
him, he was in Fossil and saw Hendricks, and at the
same time consulted with Collier in relation to this case.
The defendant is corroborated in this particular by the
affidavit of Hendricks, which, referring to Huntley, states

"that about the time he was required to appear he came into my office." The defendant's affirmation is further confirmed by McCoy's affidavit, which, it will be remembered, sets forth that about June 12, 1906, Hendricks submitted to him the proposal to relinquish the claim for damages. In Huntley's reply affidavit the following assertion is made:

"That I did see Mr. Hendricks at Fossil about seven days after I was served with summons, * * and on said day I spoke to Mr. John A. Collier, of Fossil, concerning this case, and, as I supposed, had engaged the services of Mr. Collier."

Collier testified that Huntley called upon him about the middle of July, 1906, and asked him to ascertain the status of the case, and that shortly thereafter he went to the courthouse, and found that a motion for a default had been filed. The indefiniteness of the time stated by Collier as to when he was requested to find out the condition of this suit, and as to how soon thereafter he discovered that the motion for a default had been interposed, ought not to outweigh the sworn statements of Hendricks and of Huntley in respect to the time when the defendant was at the county seat and conversed with one of the plaintiffs' attorneys about this case—and particularly so when such declarations are indirectly corroborated by McCoy's affidavit as to when he consented to waive the damages claimed.

Huntley was required to appear in the cause within 10 days from June 1, 1906, and if he was unaware of the duty, which the law imposed upon him, to file an answer as a means of protecting his right to the use of the water, his ignorance can afford no excuse for his neglect. Whether he knew that the attorney, whom he supposed was employed to defend in the suit, was able to prepare an answer to the complaint without a statement of the original diversion and the continued use of the water is, however, a question of fact, the solution of

which necessarily depends upon Huntley's knowledge of
the practice of law which he may have acquired by
experience in the trial of causes in which he was inter-
ested or with which he was acquainted. His affidavit
states that he did not realize that Collier could not prop-
erly represent him in his absence on account of no answer
having been filed, and, as this assertion is not denied,
it must be taken as true, from which we conclude that
Huntley was uninformed as to these matters.

Hendricks in his affidavit admits, in substance, that he
told the defendant that his right to the use of the water
was a vested interest, of which he could not be dis-
possessed by any court. The effect of this declaration,
however, is attempted to be avoided by the statement that
the advice was gratuitous. If the opinion had been given
at a direct solicitation of the defendant, instead of in
response to Duncan's inquiry, for which Huntley was to
pay a valuable consideration, Hendrick's advice would
unquestionably have been predicated on the assump-
tion that the right to the continued use of the water of
Pine Creek could be maintained only by vigorously assert-
ing a claim thereto, and by actively defending a suit
instituted to deprive him thereof. This was an opinion
respecting the law of the case, based on a statement of
the facts detailed to the counsel, and, if the defendant
did not comprehend the explanation by reason of his
ignorance of the law, the consequences of his mistake
would ordinarily fall upon him. The advice was given
by one of plaintiffs' attorneys respecting the particular
question involved in this suit, and if the defendant,
depending thereon, had made no preparation to defend
the suit, until after the giving of the decree, his motion
to vacate it would probably not be entitled to much
consideration. An examination of Huntley's affidavit will
show that he relied on the advice so given to the extent
only of believing that Collier, in his absence, could suc-
cessfully manage the defense, for the maintenance of

which he thought he had made arrangement. We are satisfied that there was no meeting of the minds, so as to consummate the relation of attorney and client, when the defendant requested Collier to look into the status of his case, but we feel assured that Huntley saw Collier within the time allowed to answer, and supposed he had retained an attorney to make a defense for him in the suit that had been commenced. The employment of Collier was a question of fact, and as the defendant had reason to believe, and, we think, did believe, that he had secured the services of an attorney to represent him in the trial of the cause, to whom he wrote explaining his unavoidable delay, his absence under the circumstances related substantiates the fact that the decree was rendered against him on account of his excusable neglect.

The authority conferred by statute upon a court to vacate a judgment or a decree after the close of the term during which it was given (Section 103, B. & C. Comp.) is not an arbitrary power, to be employed at pleasure in granting or denying the summary relief invoked, but is a legal discrimination, to be exercised in furtherance of justice, and in accordance with the rules of modern jurisprudence. *Thompson* v. *Connell,* 31 Or. 231 (48 Pac. 467 : 65 Am. St. Rep. 818) ; *Hanthorn* v. *Oliver,* 32 Or. 57 (51 Pac. 440 : 67 Am. St. Rep. 518) ; *Voorhees* v. *Geiser-Hendryx Inv. Co.,* 52 Or. 602 (98 Pac. 324).

2. The allegations of the verified answer, if established, would entitle the defendant to the use of the water of the creek for irrigation. The deprivation of one-half thereof, as given by the decree, will practically destroy the value of his farm which has required years of effort to make productive. In view of the consequences which must necessarily result from an enforcement of the decree, we think the assertions and denials contained in the defendant's affidavits, corroborated as they are in many particulars, make such a case as to show that the court abused its discretion in denying the motion. Its

order in this respect is therefore annulled, and the cause is remanded, with directions to set aside the decree, to permit the answer to be filed, and for such other and further proceedings as may be necessary, not inconsistent with this opinion.

REVERSED WITH DIRECTIONS.